## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| LINDA SHELTON, | § | |
|     PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-CV-264-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|     DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Linda Shelton ("Shelton") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits under Title II and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA").  In April 2008, Shelton applied for disability insurance and SSI benefits, alleging disability commencing October 15, 2007.  (Tr. 12, 14, 114-18.)

1

After her applications for benefits were denied initially and on reconsideration, Shelton requested a hearing before an administrative law judge (the "ALJ"). (Tr. 12, 60-66, 68-78.) The ALJ held a hearing on October 29, 2009 and issued a decision on January 19, 2010, in which he found that Shelton was not disabled and was not entitled to disability insurance or SSI benefits because she retained the ability to perform her past relevant work as a telemarketer. (Tr. 9-53). The Appeals Council denied Shelton's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-5.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or

2

profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings

3

support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUES

Shelton presents the following issues:

1. Whether Shelton's waiver of counsel was invalid and prejudicial because the ALJ failed to properly apprise her of her rights;

2. Whether the ALJ's failure to fully develop the record regarding Shelton's mental impairments was prejudicial; and

3. Whether the ALJ properly applied the appropriate legal severity standard at Step Two regarding Shelton's mental impairments.

## IV. ADMINISTRATIVE RECORD AND ALJ DECISION

In his January 19, 2010 decision, the ALJ found that Shelton met the disability insured status requirements of the SSA through June 30, 2011 and that she had not engaged in substantial gainful activity since October 15, 2007, the date of her alleged onset of disability. (Tr. 14.) The ALJ further found that Shelton had 1) the severe impairments of coronary artery disease, 2) degenerative joint disease of the bilateral knees and lumbar spine, 3) hypertension, and 4) obesity. (Tr. 14.) Next, the ALJ held that none of Shelton's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 15.) As to Shelton's RFC, the ALJ stated, "The claimant retains the residual functional capacity, over a sustained period of time, to lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk (individually or in combination) throughout an 8-hour workday; and otherwise

4

perform the full range of light work." (Tr. 15.) The ALJ opined, based on his RFC assessment, that Shelton was able to perform her past relevant work as a telemarketer; thus she was not disabled. (Tr. 19-20.)

## V. DISCUSSION

### A. Waiver of Counsel

Shelton argues that the "ALJ failed to adequately inform [her] of her right to counsel." (Pl.'s Br. at 11.) Shelton claims that her invalid waiver of counsel was "particularly prejudicial to her case because counsel could have introduced additional medical records that might have led to a different result." (*Id.*) In support, Shelton argues that she hired counsel to represent her when she sought Appeals Council review and that "Shelton's counsel was able to provide the Appeals Counsel with additional medical records from October 22, 2006, through November 9, 2009." (Pl.'s Br. at 11.) Shelton claims that these additional medical records showed the following: (1) objective evidence of pain and degenerative joint disease in Shelton's knee; (2) Shelton had a history of falling due to her right knee; (3) deformity of Shelton's coronoid process of the right ulna at the elbow; (4) evidence of high blood pressure, chest pain, abnormal joint tenderness, and bilateral knee swelling; and (5) further proof of Shelton's mental impairments. (Pl.'s Br. at 11-12.) Furthermore, Shelton claims that, "[i]n addition to supplying the ALJ with additional medical evidence, counsel could and would have obtained a mental RFC from Shelton's treating physicians" and requested a consultative psychological examination. (Pl.'s Br. at 12-13.)

There is no constitutional right to counsel at a social security hearing. *See Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992). However, a claimant has a statutory right to counsel

at a social security hearing.  42 U.S.C. § 406; 20 C.F.R. § 404.1705; *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003).  The claimant may, however, waive this right if given sufficient information to decide intelligently whether to retain counsel or proceed *pro se*.  *Norden v. Barnhart*, 77 F. App'x 221, 223 (5th Cir. 2003) (citing *Clark v. Schweiker*, 652 F.2d 399, 403-04 (5th Cir. 1981)).  "Sufficient information" includes explanations of how an attorney can assist claimant in the hearing, the possibility of free counsel or a contingency agreement, and the limitation on attorney's fees to 25% of past due benefits awarded.  *Clark*, 652 F.2d at 403; *Castillo*, 325 F.3d at 552 n.4; *Freeman-Park v. Barnhart*, 435 F. Supp. 2d 597, 601 (E.D. Tex. 2006).  "An ALJ should provide pre-hearing written notification of a claimant's right to counsel, and also ascertain at the hearing whether the claimant had a 'meaningful opportunity to secure counsel and, if not, consider adjourning the hearing to provide that opportunity.'"  *Ivanova v. Astrue*, No. 3:09-CV-2349-K (BH), 2010 WL 2228511, at *8 (N.D. Tex. May 20, 2010) (Ramirez, M.J.) (quoting *Freeman-Park*, 435 F. Supp. 2d at 601).  Pre-hearing written notification alone, however, may be inadequate.  *Stansel v. Shalala*, No. 94-50120, 1994 WL 684761, at *1 (5th Cir. Nov. 18, 1994) (citing *Benson v. Schweiker*, 652 F.2d 406, 408 (5th Cir. 1981)).[1]  "If, at the hearing, the ALJ fails to properly inform a claimant of her rights with regard to representation, a claimant's waiver of counsel is not considered to be 'knowing and intelligent.'"  *Oringderff v. Astrue*, No. H-09-1177, 2010 WL 3782188, at *6 (S.D. Tex. Sept. 10, 2010).

---

[1] The Court notes that it "is not entirely clear whether written notice alone may provide sufficient notice of the right to counsel."  *Brown v. Astrue*, No. H-07-1289, 2008 WL 8053433, at *3 (S.D. Tex. Apr. 28, 2008). Although the Fifth Circuit has not explicitly held that notice must be given at a hearing, it has stated that pre-hearing written notice may not be adequate. *Stansel*, 1994 WL 684761, at *1; *see also Gullett v. Chater*, 973 F. Supp. 614, 621). "Those Fifth Circuit cases discussing written notices of the right to counsel also make mention of an ALJ's reminder of the right at the hearing." *Brown*, 2008 WL 8053433, at *3.

In this case, Shelton did not have counsel present at the October 29, 2009 hearing before the ALJ. Thus, the first issue is whether Shelton knowingly and intelligently waived her right to counsel. Prior to the October 29, 2009 hearing, Shelton received several pieces of correspondence from the Social Security Administration ("Administration") that, *inter alia,* informed her of her right to counsel. (*See, e.g.*, Tr. 60-65, 68-71, 75-78.) An unsigned "Request for Hearing by Administrative Law Judge," which was dated December 16, 2008 and appears to be produced by the Administration to document Shelton's request for a hearing, contains a statement that Shelton understands she had the right to be represented at the administrative hearing and that she could receive a list of legal referral and service organizations from the Administration. (Tr. 73-74.)

Thereafter, at the beginning of the October 29, 2009 hearing before the ALJ, the following conversation took place:

ALJ:  Okay.  We are back on the record.  Good afternoon.  I am Judge King. Ms. Shelton, you were here before me before.

CLMT [Shelton]: Yes, sir.

ALJ: I think at that time, you had asked for a postponement.  And fortunately, we've been able to reschedule it.  It looks like it's taken a little bit of a while.

CLMT: Yes.

ALJ: But nonetheless, hopefully we can go forward.  So, again, good afternoon and welcome.  Now, just like before, let me tell you who is present.  We've got a hearing reporter present, Ms. Rogers, to your left, and she's recording the hearing. Now, last time you had asked for a postponement.  What do you want to do now as far as proceeding at this time?

CLMT: I guess go along with the proceeding.

ALJ: Okay.  That's what you want to do.

CLMT: Yes.

(Tr. 27-28.)   In addition, the ALJ, in his January 19, 2010 decision, wrote the following regarding Shelton's right to counsel at the hearing:

> Ms. Shelton appeared and testified at a hearing I held on this case on October 29, 2009, in Fort Worth, Texas.   Because Ms. Shelton was not represented at the hearing, I ascertained on the record that she was aware of the right to legal representation at the hearing and of my willingness to postpone his [sic] hearing so that she could seek representation.   Ms. Shelton knowingly waived this right and elected to proceed without legal representation.

(Tr. 12.)

On this record, the Court cannot say that Shelton knowingly and intelligently waived her right to counsel.   Although Shelton, who does not have a high school degree, received written notice of her right to counsel and the ALJ claims that Shelton "knowingly" waived her right to representation, the official transcript of the hearing does not support the ALJ's assertions.   (*See, e.g.*, Tr. 25-53, 139, 166.)   In fact, the transcript of the hearing before the ALJ shows no indication that the ALJ even discussed the issue of representation with Shelton.   Although the Commissioner claims that the Court should infer that the ALJ informed Shelton of her right to counsel at the "postponed first hearing," any such inference would be mere speculation and is not evident by the actual evidence before the Court.   (*See* Def.'s Resp. at 5-6.)   Since the record is unclear and contains no evidence that the ALJ provided any oral notification whatsoever of Shelton's right to counsel, the Court has no choice but to conclude that Shelton did not make a knowing and voluntary waiver of counsel.   *See Rayford v. Astrue*, No. 4:10-CV-0174-G, 2011 WL 3268405, at *4-6 (N.D. Tex. July 29, 2011) (finding that claimant's waiver of counsel was invalid and prejudicial in case where claimant did receive written notice of right to counsel but

8

ALJ made only a cursory inquiry at the hearing into why claimant was without counsel and record did not indicate why attorney withdrew from the case prior to the hearing); *Brown*, 2008 WL 8053433, at *5 (finding that claimant did not receive sufficient notice of his right to counsel and waiver was not effective in case where it was unclear whether claimant did receive some pre-hearing notice of his right to representation and there was no way for Court to assess the nature or substance of the off-the-record conversation regarding representation between the ALJ and claimant); *Freeman-Park*, 435 F. Supp. 2d at 601. *Cf. Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) ("We conclude that the numerous written notices Castillo received-along with the ALJ's reminder to Castillo at the hearing of her right to counsel-sufficiently informed her of her right to an attorney, and that she validly consented to proceed without representation."); *Shelton v. Astrue*, No. 3:07-CV-1347-P, 2008 WL 4809436, at *5 (N.D. Tex. Nov. 3, 2008) ("The written notices, in conjunction with the ALJ's discussion of the issue at the hearing . . . , adequately informed Plaintiff of her right to counsel and she waived such right when she consented to proceed with the hearing without an attorney.").

"A flawed waiver of counsel requires remand, however, only when the record reveals evidentiary gaps that result in unfairness or clear prejudice." *Guerin v. Shalala*, No. 93-8530, 1994 WL 395077, at *2 (5th Cir. June 28, 1994); *see Brock v. Chater*, 84 F.3d 726, 729 n.1 (5th Cir. 1996). The claimant must show that counsel "could have and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728. "It should be emphasized that [the claimant] only need establish that such evidence might have altered the result; he need not establish that such evidence would have unequivocally resulted in the grant of benefits." *Gullett v. Chater*, 973 F. Supp. 614, 621 (E.D. Tex. 1997).

9

In this case, Shelton argues that she was prejudiced because "counsel could have introduced additional medical records that might have led to a different result. (Pl.'s Br. at 10-11.) Specifically, Shelton points to medical records, as discussed above, that were submitted to the Appeals Counsel by counsel that Shelton obtained after the ALJ's decision (but before the Appeals Council's decision). (Pl.'s Br. at 11-12.) In addition, Shelton claims that if she had been represented by counsel at the hearing, counsel would have obtained a mental RFC from Shelton's treating physicians that "might have shown more restrictive functional limitations than assessed by the ALJ" and counsel would have requested a consultative psychological examination. (Pl.'s Br. at 12-13.)

In this case, as to the additional medical records that Shelton claims her counsel would have presented at the hearing had she been represented, Shelton cannot show that such evidence might have altered the result. Shelton did obtain counsel after the hearing before the ALJ but before the Appeals Council decision affirming the ALJ's decision. Her counsel submitted the medical records in question to the Appeals Council before it made its decision affirming the ALJ's decision and Shelton has not adequately demonstrated how the evidence submitted to the Appeals Council would have changed the ALJ's ruling.[2] Thus, the medical records in question were considered by the Appeals Council before the final decision was made and Shelton was not prejudiced by the failure to have representation at the hearing before the ALJ.

---

[2] Social Security regulations allow claimants to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision to deny benefits. 20 C.F.R. §§ 404.970(b), 404.976(b); *see Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 332 (N.D. Tex. 2003). The Appeals Council is required to evaluate the entire record, including any new and material evidence submitted by the claimant. *Id.* "A court considering the final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported." *Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010) (citing *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006)).

However, Shelton's claim that, had she been represented by counsel at the hearing, counsel would have obtained a mental RFC from Shelton's treating physicians that "might have shown more restrictive functional limitations than assessed by the ALJ" and counsel would have requested a consultative psychological examination is more problematic. (Pl.'s Br. at 12-13.) In his January 19, 2010 decision, the ALJ found that Shelton did not "have a mental impairment or combination of mental impairments of listing-level severity." (Tr. 15.) In evaluating Shelton's mental impairments, the ALJ found that Shelton first began reporting symptoms of a mental impairment in June 2008, after Shelton had filed her application for disability insurance and SSI benefits, but that she did not seek any medical attention for such impairment until March 2009. (Tr. 17.) The ALJ then stated, "At that time [March 2009], she was provided a working diagnosis of bipolar disorder, but I find no subsequent evaluation of the claimant and conclude that she has not been fully evaluated and diagnosed by a mental health professional." (Tr. 17.) The ALJ then found, *inter alia*, that Shelton suffered "no greater than 'mild' limitations in [her] activities of daily living, social adequacy, and concentration attributable to a mental impairment, and there have been no episodes of decompensation." (Tr. 17.) Thus, the ALJ concluded that Shelton did not have a severe mental impairment. (Tr. 17.)

Based on the facts of this case, the Court concludes that Shelton has met her burden of showing that, had she been represented by counsel at the hearing before the ALJ, such counsel "could have and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728. The ALJ specifically acknowledged that Shelton reported having a mental impairment that began in June 2008, several months after the date Shelton originally filed for disability. (Tr. 17.) In addition, the ALJ was on notice that Shelton had been diagnosed with a

11

bipolar disorder but had not been fully evaluated and diagnosed by a mental health professional. The ALJ appears to use the lack of evidence regarding Shelton's mental impairment to find that Shelton was not suffering from a severe mental impairment. Instead, the ALJ should have used the lack of evidence as an indication that he needed to obtain additional information regarding Shelton's alleged mental impairments. A mental RFC or a consultative psychological examination might have shown more restrictive functional limitations than assessed by the ALJ and could have altered the result. Thus, Shelton has met her burden of showing prejudice from her invalid waiver of counsel by identifying significant evidentiary gaps that, if filled, might have altered the ALJ's decision. *See Rayford*, 2011 WL 3268405, at *5; *Ivanova*, 2010 WL 2228511, at *9; *Pullam v. Astrue*, No. 06-CV-1771, 2008 WL 4000538, at *4 (W.D. La. July 1, 2008); *Gullett v. Chater*, 973 F. Supp. 614, 622 (E.D. Tex. 1997). Consequently, remand is required.

Since remand is required, the Court will not consider the remaining two issues. However, the Court notes, based on the above analysis, that it is likely the ALJ also failed to discharge his duty to develop the record as such duty may impose a need to order an examination of the plaintiff. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). The ALJ, upon remand, should carefully consider the remaining two issues.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings and conclusions.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **February 13, 2012** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

13

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January __30__, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

14